**JEFFREY BROWNE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-022

Supreme Court of the Virgin Islands

August 29, 2008

JUSTIN CAINE HARRELL, ESQ., Law Offices of Andrew L. Capdeville, P.C., St. Thomas, USVI, *Attorney for Appellant*.

243

TIFFANY V. ROBINSON, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HODGE, *Justice Pro Tem.*[1]

## OPINION OF THE COURT

### (August 29, 2008)

PER CURIAM. Appellant, Jeffrey Browne (hereafter "Browne"), appeals the Superior Court order granting a motion, brought by Appellee (hereafter "the People"), for his continued pretrial detention. In this appeal, this Court is asked to resolve a vital, recurring issue which has caused a split among the judges of the Superior Court of the Virgin Islands.[2] Specifically, we must determine which of the conflicting statutory provisions governs pretrial detention of defendants charged in the Superior Court with first degree murder under Virgin Islands law. For the reasons which follow, we will affirm the trial court's use of section 3 of the Revised Organic Act of 1954 [hereinafter "the ROA" or "the Revised Organic Act"] to determine Browne's continued pretrial detention but will remand to the trial court for a proper section 3 determination of whether the proof is evident or the presumption is great, consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2007, Browne, then a Virgin Islands police officer on administrative leave, was arrested in connection with a shooting that

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. Verne A. Hodge, a retired Presiding Judge of the Superior Court, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] In *People v. Dowdye*, 48 V.I. 45 (V.I. Super. 2006), the trial judge held that section 3 of the Revised Organic Act preempts title 5, section 3504a of the Virgin Islands Code. Conversely, in *People v. Thomas*, 49 V.I. 151 (V.I. Super. 2007), the trial judge held that title 5, section 3504a and the Bail Reform Act of 1984 supersede section 3 of the Revised Organic Act. *See also People v. Ford*, 49 V.I. 270 (V.I. Super. 2008) (pretrial bail decision by same trial judge applying local statute rather than section 3 of the ROA). In another case, a third Superior Court judge "conclude[ed] that [the defendant charged with *attempted* first degree murder] must be detained under the provisions of the Bail Reform Act." *See People v. Matthew*, 49 V.I. 285, 292 (V.I. Super. 2008) (noting that the BRA and the local statute can be read consistently as there is no direct conflict between the two statutes). In the case before us, the People urge us to adopt *Dowdye's* reasoning, while Browne advocates that we adopt the reasoning in *Thomas*.

occurred at approximately 1:27 a.m. on Christmas Day in the area of the John F. Kennedy Terrace housing community on St. Croix. As a result of this shooting, two persons were killed and four others wounded. Browne was charged with two counts of first degree murder, four counts of attempted murder, four counts of first degree assault, three counts of carrying or using a weapon during the commission of a crime of violence, three counts of unauthorized possession of ammunition, and one count of reckless endangerment.[3]

On January 2, 2008, the People moved to detain Browne pending trial pursuant to title 5, section 3504a of the Virgin Islands Code (hereafter "section 3504a" or "the local statute") and section 3 of the ROA. Two days later, the People filed its Supplemental Memorandum in Support of Motion to Detain without Bail. On January 7, 2008, the trial court granted the motion, in part, holding that the local statute allows for up to sixty days detention *nunc pro tunc* to the date of Browne's arrest. However, the court explicitly reserved its ruling with respect to the applicability of section 3 of the ROA. The court subsequently entered its Second Order on Motion for Detention, on January 15, 2008, which denied the People's request for detention to the extent it was made pursuant to section 3 of the ROA. In so holding, the court expressly referenced and adopted the holding in *People v. Thomas*, 49 V.I. 151 (V.I. Super. 2007).

On February 7, 2008, Browne filed his Motion for Pre-Trial Release arguing that the Bail Reform Act of 1984 (hereafter "the BRA") was applicable in this case, and the People filed its Motion to Continue Detention of Defendant Pending Trial. On February 13, 2008, the trial court held a hearing to determine whether the People could continue to have Browne detained beyond the sixty-day period authorized by the local statute. At the hearing, several witnesses, including Browne's parents and several members of the community, testified to Browne's good character and strong community ties. Browne's parents offered to act as his third party custodians and to post two parcels of real property on his behalf. In addition, Browne offered to surrender his passport and submit to home detention and electronic monitoring. In contrast, the People offered evidence that Browne would pose a danger to his family

---

[3] The People charged Browne and co-defendant Luis Melendez, case number SX-07-CR-601, with identical offenses in the same Information. However, only Browne appeals his detention to this Court.

and the community and would present a flight risk if released. Specifically, the People demonstrated that Browne called the police the day of and the day after the shooting after observing several vehicles driving slowly by his home, and that Browne was wearing a bulletproof vest when the police arrived. The People also argued that Browne's home was vulnerable to a retaliatory drive-by shooting and that the lengthy potential sentence served as an incentive for Browne to flee before trial.

At the conclusion of the hearing, the judge ordered the parties to submit written briefs on the applicability of section 3 of the ROA and the BRA thereby indicating his intention to reconsider the applicability of section 3 of the ROA and the holding in *Dowdye*. Both parties complied and submitted their briefs on February 25, 2008.

Thereafter, the trial court issued its March 4, 2008 "Order on Motion for Detention," denying Browne pretrial release primarily under section 3 of the ROA.[4] Browne filed his notice of appeal on March 17, 2008.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4 § 32(a). In particular, "[a]n appeal by a defendant . . . pursuant to section 3504a, of title 5 of the Virgin Islands Code or other provision of law, shall lie to the Supreme Court from a decision or order, entered by the Superior Court, detaining a person charged with or convicted of an offense . . . [and t]he appeal shall be determined promptly." 4 V.I.C. § 33(d)(4).

In a criminal case appealed pursuant to title 4, section 33(d)(4) of the Virgin Islands Code, an appeal "shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted." 4 V.I.C. § 33(d)(5). Accordingly, because the order appealed to this Court was entered on March 4, 2008 and Browne's Notice of Appeal was filed on March 17, 2008, this appeal is timely.

---

[4] The trial court expressly stated that it was granting continued detention pursuant to section 3 of the ROA and the local statute, but the court additionally held that an analysis under the BRA also demands Browne's detainment.

Our review of the Superior Court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In particular, we exercise plenary review of questions of statutory construction. *V.I. Pub. Servs. Comm'n v. V.I. Water and Power Auth.*, 49 V.I. 478, 483 (V.I. 2008). Moreover, to the extent that Browne challenges the sufficiency of the evidence leading to his continued detention, we review the trial court's findings *de novo. See Smalls v. Gov't*, 30 V.I. 82, 85 (D.V.I. App. Div. 1994) (citing *United States v. Delker*, 757 F.2d 1390, 1394-1399 (3d Cir. 1985) (discussing the applicable standard of review for trial court bail determinations under the BRA) ("While we are not free to ignore the trial court's reasoning, we may amend or reverse a detention or release decision, if our review of the record compels a different result."). Findings of fact, however, are reviewed only for clear error. *Daniel*, 49 V.I. at 329.

## B. Distinguishing the Conflicting Statutes

Before determining whether section 3 of the ROA, title 5, section 3504a of the Virgin Islands Code, or the provisions of the BRA govern the pretrial detention of defendants charged with first degree murder under Virgin Islands law, a brief explanation of the distinctions between the three conflicting statutes involved in this case is helpful.

### 1. *Section 3 of the Revised Organic Act*

■ Section 3 of the ROA provides that "[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, *except for first degree murder* or any capital offense when the proof is evident or the presumption is great." The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995) (preceding V.I. CODE ANN. tit. 1) (emphasis added). The ROA was enacted by the United States Congress pursuant to Article IV, section 3, clause 2 of the United States Constitution. *See* U.S. CONST. art. IV, § 3, cl. 2 ("Congress shall have Power to dispose of and make all needful Rules and regulations respecting the Territory or other Property belonging to the United States . . ."). By its plain language, section 3 of the ROA, known as the "Bill of Rights," requires the detention of any defendant charged with first degree murder when the trial court finds the proof evident or the presumption of guilt great. However, all other defendants, including those

247

charged with first degree murder where the proof is not evident and the presumption not great, are bailable on sufficient sureties.

The People contends that, because the ROA is the "equivalent of a Constitution for the territory," the ROA preempts the local statute to the extent that the local statute purports to govern defendants charged with first degree murder. (Appellee's Br. 6.) The People argue, therefore, that Browne should be detained before trial pursuant to section 3 because he is charged with first degree murder and the proof supporting his charge is evident.

### 2. Title 5, Section 3504a of the V.I. Code (the Local Statute)

Title 5, section 3504a is a local statute titled "Detention prior to trial." The local statute provides for the detention of "person[s] charged with [the dangerous crimes of] *murder in the first degree,* rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, or drug trafficking." 5 V.I.C. § 3504a(a)(1) (1982). (emphasis added). Unlike the ROA, which provides for automatic detention of those charged with first degree murder when the proof of a defendant's guilt is evident, the local statute provides for pretrial detention of a defendant *only if*:

> *the government certifies* by motion that, based on the person's pattern of behavior consisting of his past and present conduct, the nature and circumstances of the offense charged, the weight of the evidence presented, his family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution or failure to appear at court proceedings, *there is no one condition or combination of conditions which will reasonably assure the safety of the community or, particularly in the case of a person charged with drug trafficking, that the person charged will appear for trial.*

*Id.* (emphasis added).

Section (c) of the local statute requires that the court make three findings before it may order pretrial detention of a defendant. The court must find:

> (1) that there is clear and convincing evidence that the person is a person described in subsection (a); (2) that there is no one or combined

conditions which will reasonably assure the safety of any other person or the community or, particularly with respect to a person charged with drug trafficking, that the person charged will appear for trial; and (3) that, except with respect to a person described in subsection (a)(2)[5], on the basis of information by proffer or otherwise there is a substantial probability that the person committed the offense for which he is present before the court.

5 V.I.C. § 3504a(c). If all three of the above elements are found, the trial court may order pretrial detention, but "upon the expiration of sixty calendar days . . . [a] person detained under subsection (c) shall be treated in accordance with the rules of criminal procedure for release on bail . . . ." 5 V.I.C. § 3504a(d)(2).

The local statute and the ROA both purport to govern pretrial release for defendants charged in Virgin Islands courts with first degree murder under Virgin Islands law, and they do so in a conflicting manner. In essence, a first degree murder defendant treated under the ROA will automatically be detained pending trial if the proof is evident or the presumption great, while the same defendant treated under the local statute will be released unless the government can show that there are no conditions that will reasonably assure the safety of the community or the defendant's appearance at trial.

### 3. The Bail Reform Act

The Bail Reform Act of 1984 is a substantive federal statute, codified at 18 U.S.C. §§ 3141-3156. Unlike the local statute, the BRA provides that a rebuttable presumption arises that no conditions will reasonably assure the safety of the community if release is granted for a defendant charged with a crime punishable by life imprisonment[6] or death. 18 U.S.C. § 3142(e) and (f)(1)(B). The defendant may rebut this presumption by offering proof that conditions exist to reasonably assure the safety of the community and his appearance at trial. In deciding

---

[5] This exception relates to a defendant who threatens or intimidates a witness or juror. *See* 5 V.I.C. § 3504a(a)(2). Such a defendant may be detained prior to trial upon receiving a hearing under section (b).

[6] In the Virgin Islands, a defendant convicted of first degree murder shall be imprisoned for "the remainder of his natural life without parole." 14 V.I.C. § 923(b).

whether to grant pretrial release of such a defendant, the court must take into account (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger posed to any person or the community by the defendant's release. 18 U.S.C. § 3142(g). Thus, the BRA, like the local statute, differs from section 3 of the ROA because it provides for the possibility of pretrial release for defendants charged with non-capital crimes, including first degree murder where the proof is evident or the presumption great.

## C. Section 3 of the ROA Governs Pretrial Detention of Defendants Charged with First Degree Murder in the Superior Court under Virgin Islands Law

After requesting and receiving the parties' briefs on the applicability of section 3's bail provision, in light of the existence of the conflicting local statute, the trial court explicitly ordered the continued detention of Browne pursuant to both section 3 of the ROA and the local statute. In so holding, the trial court's March 4, 2008 order reasoned that section 3 remains controlling law because the ROA, which is an Act of Congress made expressly applicable to the Virgin Islands, takes precedence over a territorial statute such as section 3504a.[7] The trial court further rationalized that the BRA is essentially a rule of the Superior Court, rather than a substantive federal law, because it is applicable in the Superior Court of the Virgin Islands by virtue of Superior Court Rule 141.[8] The trial court, therefore, stated that both the ROA and the local statute take

---

[7] In holding that the ROA's bail provision takes precedence over the local statute, the trial court cited to the Supremacy Clause of article VI of the United States Constitution. We note that section 3 of the ROA has been deemed constitutional in nature. The Third Circuit Court of Appeals, in *In re Brown,* stated that section 3 expresses Congress's intent to make the United States Constitution applicable in the Virgin Islands to the extent possible, consistent with its status as a territory. *See* 8 V.I. 313, 439 F.2d 47, 50 (3d Cir. 1971) ("A claim of violation of the Bill of Rights, therefore, amounts in substance to a claim of constitutionality.") (analyzing the equal protection provision of section 3).

[8] Superior Court Rule 141 reads, in relevant part:

(a) All persons shall, before conviction, be bailable by sufficient sureties approved by a judge . . .

(b) Whenever a person charged with an offense is before a judge of this court for release on bail prior to trial, pursuant to these rules, *the judge shall, in considering the release of such person, be guided by and apply the appropriate provisions of "The Bail Reform*

250

precedence over the BRA. Nevertheless, the trial court concluded that an analysis of the facts under the BRA would also compel the continued pretrial detention of Browne.

1. *Section 3 of the ROA Was Not Repealed by Ortiz or Any Other Case or Statute*

In arguing that the local statute and the BRA should apply to defendants charged with first degree murder in local Virgin Islands courts, Browne relies heavily upon *Gov't of the Virgin Islands v. Ortiz*, 7 V.I. 521, 427 F.2d 1043 (3d Cir. 1970).[9] In *Ortiz*, the Third Circuit Court of Appeals considered the conflict between the ROA and the BRA with respect to a defendant tried for first degree murder under Virgin Islands law in the District Court of the Virgin Islands.[10] The government in *Ortiz* argued that the BRA was not applicable to first degree murder charges because it conflicted with the bail provision of section 3 of the ROA. *See* 427 F.2d at 1045. In denying the defendant pretrial bail, the district court relied on section 3 of the ROA. *Id.* at 1045 n. 4. However, the Third Circuit Court of Appeals ultimately held that section 3 of the ROA did not preempt the BRA. *Id.* at 1048. In so holding, the Court of Appeals looked to the operable language of the Bail Reform Act, which provides: " 'Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial (on certain conditions).' " *Id.* at 1047 (quoting 18 U.S.C. § 3146(a) (Supp. IV, 1969)). The court found that " '[t]he term 'judicial officer' means . . . any person or court authorized pursuant to . . . the Federal Rules of Criminal Procedure, to bail or otherwise release a person

---

*Act", Public Law 98-473, October 12, 1984, 18 U.S.C. secs. 3141-3156 (1985), which Act is by this reference incorporated into and made a part of these rules.*
(c) Bail and other conditions of release shall be ordered in any of the following categories, except as otherwise provided for serious felony offenses . . .

SUPER. CT. R. 141 (emphasis added).

[9] Browne also relies upon the Superior Court's holding in *Thomas*. Like Browne, the *Thomas* court reasoned that *Ortiz* is controlling law because the District Court was acting as a local court when it heard cases involving first degree murder prior to the establishment of the Superior Court. *See* 49 V.I. at 153-54. Questioning the efficacy of *Dowdye* for not following *Ortiz*, the *Thomas* court held that the local statute, rather than section 3 of the ROA, governs pretrial detention decisions in the Superior Court. 49 V.I. at 162.

[10] Since *Ortiz* was decided in 1970, the Third Circuit Court of Appeals analyzed the BRA of 1966 rather than the 1984 Act. Nonetheless, the 1966 Act, like its successor, provided for the possibility of pretrial release of first degree murder defendants.

before trial . . . .' " *Id.* (quoting 18 U.S.C. § 3152(1) (Supp. IV, 1969)). Consequently, the Court of Appeals ruled that "[t]he District Court of the Virgin Islands comes within this definition because the Federal Rules of Criminal Procedure, including Rule 46 relating to bail, apply to all criminal proceedings in . . . the District Court of the Virgin Islands . . . . FED. R. CRIM. P. 54(a)(1)."[11] *Id.* (internal quotation marks omitted). The court elaborated:

> "[t]he enabling act under which the rules were promulgated contained specific authorization for application of the rules to the Virgin Islands." Act of June 29, 1940, ch. 445, 54 Stat. 688 (now 18 U.S.C. § 3771 (Supp. IV, 1969)). In *Virgin Islands v. Solis*, 3d Cir. 1964, 4 V.I. 615, 334 F.2d 517, 519, we held that under Rule 54(a)(1) the Federal Rules of Criminal Procedure apply 'to all criminal proceedings in the District Court of the Virgin Islands, whether the crime is proscribed by local or Federal law.'

*Id.* at 1047 n. 9.

Although the defendant in *Ortiz* was charged with murder under Virgin Islands law, which is not an "offense" under the BRA[12], the court concluded that Rule 46(a) of the Federal Rules of Criminal Procedure remedied that problem. Specifically, the court reasoned that:

> the Federal Rules of Criminal Procedure apply by their own terms to the trial of all criminal offenses in the District Court of the Virgin Islands. More importantly, Congress provided in the enabling act that 'all laws in conflict therewith shall be of no further force and effect.'[13] Act of June 29, 1940, ch. 445, 54 Stat. 688 (now 18 U.S.C. § 3771

---

[11] This provision of the Federal Rules of Criminal Procedure is now contained in Rule 1(a)(3)(C). *See* FED. R. CRIM. P. 1(a)(3)(C).

[12] The term "offense" in title 18, section 3146 of the United States Codes is defined as "any criminal offense . . . which is in violation of an Act of Congress and is triable in any court established by Act of Congress." 18 U.S.C. § 3152(2) (Supp. IV, 1969).

[13] We note that the enabling act of the Federal Rules of Criminal Procedure was enacted on June 29, 1940, *see* Act of June 29, 1940, ch. 445, 54 Stat. 688 (now 18 U.S.C. § 3771 (Supp. IV, 1969)), and the rules themselves were originally adopted and became effective on March 21, 1946, *see* FED. R. CRIM. P., *Historical Notes* (preceding FED. R. CRIM. P. 1). Section 3 of the ROA, however, was not enacted until 1954. Thus, the repealer clause contained in the Rules' enabling act could not have affected the validity of the ROA provisions as they related to Federal Rule 46. Nevertheless, because we conclude that *Ortiz* is limited

252

(Supp. IV, 1969)). By the force of this legislation, Rule 46(a)(1) superseded the bail provision of section 3 of the Revised Organic Act, 48 U.S.C. § 1561 [(1954)], and created a right to bail before trial for first degree murder charged under territorial law *in the District Court of the Virgin Islands.*

*Id.* at 1048 (citing *Mafnas v. Guam,* 228 F.2d 283, 285 (9th Cir. 1955) (footnote omitted) (emphasis added).

Upon analyzing the perceived requirement of Rule 46 that the BRA is to be utilized in the District Court of the Virgin Islands, the Third Circuit Court of Appeals concluded that "[t]hese considerations make it appropriate that we utilize our supervisory power to require that the standards and procedures of the [BRA] be adopted and followed in the consideration and disposition of bail applications in the District Court of the Virgin Islands." *Id.* It is therefore clear that the holding of *Ortiz* is limited to criminal proceedings in the District Court of the Virgin Islands. Consequently, as significant as the *Ortiz* decision may be for criminal defendants tried in the District Court of the Virgin Islands, we find it evident from the plain language of the decision that it does not apply to defendants tried for first degree murder in the Superior Court of the Virgin Islands. We can find no other case or statutory law that alters this conclusion.

In *Smalls v. Gov't of the Virgin Islands,* 30 V.I. 82 (D.V.I. App. Div. 1994), also relied upon by Browne, the Appellate Division of the District Court considered a Territorial Court[14] decision in which the judge ordered pretrial detention of the defendant. Although the Appellate Division ruled that section 3504a governed the trial court's decision and that the trial court could use the BRA as guidance for that decision, the issue of whether section 3 of the ROA preempted section 3504a was apparently not before the court. Thus, except for its proposition that the BRA should guide a trial court's decision under the local statute, the *Smalls* decision is not relevant to the issue in this appeal.

Browne further relies on the Appellate Division's decision in *Karpouzis v. Gov't of the Virgin Islands,* 36 V.I. 132, 961 F. Supp. 841,

---

to criminal proceedings in the District Court, we need not concern ourselves with this apparent inconsistency.

[14] The Territorial Court is now known as the Superior Court. *See infra* n. 16.

845 (D.V.I. App. Div. 1997). In *Karpouzis,* the court recognized that "[p]ersons charged with certain violent, dangerous, drug crimes are governed by V.I. CODE ANN. tit. 5, § 3504a and the standards set forth in this Court's decision in *Smalls*[]." *Id.* at 845. In *Karpouzis,* however, the defendant was not charged with a first degree murder or another violent crime, but rather with nonviolent, white-collar criminal activity. Accordingly, the court's declaration concerning the applicability of section 3504a to such violent crimes is dicta. Moreover, because the defendant in *Karpouzis* was not charged with first degree murder, section 3 of the Revised Organic Act was not implicated in that case and it does not appear that the court considered its provisions. For these reasons, Browne's reliance on *Karpouzis* is similarly misplaced.

More on point is the Superior Court's decision in *People v. Dowdye,* 48 V.I. 45 (V.I. Super. 2006). In *Dowdye,* the defendant was charged with first degree murder, and the Superior Court judge ordered him detained pending trial pursuant to section 3 of the ROA. In applying section 3 of the ROA, instead of title 5, section 3504a of the Virgin Islands Code, the court characterized the Organic Act as "the 'evolving' unofficial constitution of the United States Virgin Islands." *Id.* at 56. Upon determining that no prior precedent controlled a case in which the defendant was charged with first degree murder in the Superior Court, the court concluded that "because § 3 is a V.I. Constitutional provision, . . . [it] preempts conflicting federal or local statutes or rules when applied to the *Superior Court of the Virgin Islands." Id.* at 68 (emphasis in original).

■ Without extensively discussing the merits of the court's decision in *Dowdye,* we agree that the court correctly observed that case precedent did not control the court's decision in *Dowdye,* and it likewise does not control our decision in this appeal. *Ortiz* is the only case in which any court has previously considered the application of section 3, and, because that decision was strictly limited to bail hearings in the District Court, it is inapplicable here. Therefore, without the aid of controlling, or even persuasive precedent, the Court's decision in this appeal is dictated by the plain language of the ROA. Section 3 reflects Congress's unequivocal intent that persons charged with criminal offenses in the Virgin Islands are bailable *except,* among others, a person charged with first degree murder where the proof is evident or the presumption is great that the person committed the murder. We are unaware of any authority which even remotely suggests that Congress intended to repeal section 3 as it applies

to criminal prosecutions in the Superior Court of the Virgin Islands.[15] Accordingly, consistent with the *Dowdye* court, we agree with the People that *Ortiz* limits the required use of the BRA to actions tried in federal courts, including the District Court of the Virgin Islands.

Browne buttresses his argument that *Ortiz* repealed section 3 of the ROA, and that we should hold *Ortiz* applicable to cases tried in the Superior Court, on the contention that the Superior Court and predecessor Territorial Court were not in existence when *Ortiz* was decided. Consequently, Browne argues that the District Court of the Virgin Islands was essentially acting as a local court for the *Ortiz* defendant who was charged with first degree murder under the local statute.

■■ Although the Superior Court, with its current jurisdiction, was not yet in existence at the time *Ortiz* was decided,[16] the rationale supporting the *Ortiz* court's holding nevertheless validates the People's argument that *Ortiz* limits the use of the BRA solely to bail hearings in the District Court. As discussed above, the *Ortiz* court held that the Federal Rules of Criminal Procedure and their enabling act compelled application of the BRA to pretrial bail decisions in courts established by the United States Congress, specifically including the District Court of the Virgin Islands. However, in 1984, Congress also enacted rules-enabling legislation providing for the adoption of rules governing the practice and

---

[15] Indeed, Congress had the opportunity to expressly repeal the challenged language in section 3 when it added additional paragraphs to that section in 1968. *See* Act of Aug. 23, 1968, Pub. L. 90-496, § 11, 82 Stat. 841. Congress also could have expressly repealed section 3's detention provision as part of the comprehensive 1984 amendments, when it added language to section 21 providing that procedure in the local courts is to be governed by local law and rules. *See* Act of Oct. 5, 1984, Pub. L. No. 98-454, Title VII, § 701, 98 Stat. 1737.

[16] The Superior Court and its predecessor Territorial Court were created pursuant to the authority of the same ROA that mandates release on bail except for first degree murder where the proof is evident or the presumption is great. On October 1, 1991, the Territorial Court assumed jurisdiction over all civil matters in accordance with title 4, section 76(a) of the Virgin Islands Code. On January 1, 1994, the court's jurisdiction was expanded to all criminal matters. Finally, on October 29, 2004, the Territorial Court was renamed the Superior Court. Although the Territorial Court was not created until 1977, local courts have existed in the Virgin Islands for many years prior to that date. See 1976 V.I. Sess. Laws 192 (Act. No. 3876). In fact, the *Ortiz* court notes the existence of local municipal courts in 1970. *See* 427 F.2d at 1048 ("We note that on March 3, 1970, the perceptive judge of the district court achieved the same result for the municipal courts of the Virgin Islands . . . .").

Importantly, the Superior Court has the obligation to apply the law as it *currently* exists, which includes section 3 of the ROA. *See* Revised Organic Act § 21(a)-(b).

255

procedure in the local courts of the Virgin Islands. *See* Revised Organic Act § 21(c). Pursuant to that authority the Superior Court Rules were duly adopted, including Superior Court Rule 7 which clearly states that "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Superior] Court and, *to the extent not inconsistent therewith, by the* . . . Federal Rules of Criminal Procedure . . . ." SUPER. CT. R. 7. Therefore, the Federal Rules of Criminal Procedure apply in the Superior Court only in the absence of a Superior Court rule addressing the matter. In this case, Superior Court Rule 141, unlike Federal Rule of Criminal Procedure 46(a) which mandates application of the BRA in the District Court of the Virgin Islands, relegates the role of the BRA to one of providing mere guidance to trial judges. *See* SUPER. CT. R. 141, *supra* n. 7. Furthermore, as the local statute was not enacted until 1982, *Ortiz* did not address the conflict between the local statute and section 3 of the ROA. Accordingly, we hold that the detention provision contained in section 3 of the ROA was not repealed by *Ortiz* or any other court decision or statute. It remains a valid legal provision to be observed and implemented by local courts.

### 2. *The Legislature Was Without Authority to Provide for Pretrial Release of Defendants Charged with First Degree Murder*

█ The United States Supreme Court has held that the excessive bail clause of the Eighth Amendment to the United States Constitution does not guarantee a right to bail in all cases. *See U.S. v. Salerno*, 481 U.S. 739, 752-54, 107 S. Ct. 2095, 2104-05, 95 L. Ed. 2d 697 (1987). However, by simultaneously enacting the Judiciary Act of 1789, which was the forerunner of the BRA, Congress granted the right to pretrial bail for defendants charged with noncapital federal crimes in federal courts. *See* Act of Sept. 24, 1789, ch. 20, § 29, 1 Stat. 88. Evidencing an intent to ensure that Virgin Islands defendants were also guaranteed an explicit right to bail, Congress, in addition to enacting the Eighth Amendment's excessive bail prohibition language in the ROA, enacted the bail provision in section 3 of the ROA, providing that "[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses" except for

those charged with first degree murder or capital crimes where "the proof is evident or the presumption great." *See* Revised Organic Act § 3.[17]

In 1982, twenty-eight years after Congress enacted the ROA, including section 3's bail provision, the Virgin Islands Legislature enacted the local statute, pursuant to its authority under section 8(a) of the ROA, granting pretrial bail to defendants charged with dangerous crimes such as first degree murder. *See* Revised Organic Act § 8(a).[18] Although Section 8(a) of the ROA empowers the Legislature to enact legislation for the people of the Virgin Islands, it expressly prohibits the enactment of laws that are "inconsistent with [the ROA] or the laws of the United States applicable to the Virgin Islands." *Id.* Therefore, as section 3 of the ROA denies the right to pretrial bail for defendants charged with first degree murder when the proof is evident or the presumption great, the Legislature was without authority to enact a conflicting statute granting bail to such defendants when judges find that conditions exist to assure the safety of the community and the defendant's appearance at trial. Accordingly, we hold that section 3 of the ROA governs the issue of pretrial detention for first degree murder defendants in local Virgin Islands courts[19], and that title 5, section 3504a is inapplicable to the

---

[17] We note that Congress's express grant of the right to bail in the Virgin Islands, except for first degree murder, was obviously intentional, as it was specifically provided for in the ROA but not in the virtually identical section 1421b of Guam's Organic Act of 1950, which was enacted just four years prior to the ROA. *See* Organic Act of Guam § 1421b, 48 U.S.C. §§ 1421-25.

[18] Section 8(a) of the ROA states, in full:

 The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands, but no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, nor shall the lands or other property of nonresidents be taxed at a higher rate than the lands or other property of residents.

Revised Organic Act § 8(a).

[19] We note that the resulting disparate treatment of defendants tried with first degree murder in local courts and those charged in the federal court is regrettable, but, as with many differences between the federal and local courts, such disparate treatment is unavoidable. For instance, title 18, section 2119(3) of the United States Code provides that defendants convicted in federal courts of carjackings resulting in death may receive the death penalty, while title 14, section 923(b) of the Virgin Islands Code provides that defendants convicted of first degree murder in local courts will receive life in prison without the possibility of parole rather than the death penalty.

extent that it purports to grant pretrial bail for defendants charged with first degree murder in the Superior Court under Virgin Islands law where the proof is evident or the presumption great.

■■ We also hold that the BRA is not applicable to cases tried in the Superior Court except as provided for in Superior Court Rule 141. Specifically, the appropriate provisions of the BRA merely guide trial judges with respect to the *release* of defendants pending trial, but not with respect to the *detention* of such defendants. *See* SUPER. CT. R. 141. The rules of the Superior Court may only provide for the practice and procedure to be followed in the trial court; they may not, however, adopt the substantive federal law governing detention and release of defendants in federal court for use in local Virgin Islands courts. *See Gov't v. Durant*, 49 V.I. 366, 373 (V.I. 2008); *In re: Richards*, 42 V.I. 469, 213 F.3d 773, 783 (3d Cir. 2000). To allow otherwise would result in the violation of section 21(c) of the ROA. *See* Revised Organic Act, § 21(c); *Durant*, at 375-76 n. 8.

### D. The Trial Judge's Findings of Fact Do Not Sufficiently Establish the Necessary Inquiry Required by Section 3 of the Revised Organic Act

On appeal, Browne maintains that the trial court should have applied the three factors established by section (c) of the local statute, rather than the evident proof standard contained in section 3 of the ROA. Browne does not appear to contest the presence of the first or third factors, namely, clear and convincing evidence that he was charged with first degree murder, a violent offense, and substantial probability that he committed the offense. *See* 5 V.I.C. § 3504a(c)(1), (2). Instead, he argues that the trial court lacked sufficient evidence establishing that there were no conditions that would reasonably assure the safety of the community and his appearance at trial. *See* 5 V.I.C. § 3504a(c)(3).[20]

■ Having concluded, however, that section 3 of the ROA, and not the local statute or the BRA, governs pretrial detention for defendants

---

[20] Despite many attempts by this Court at oral argument to query Browne's counsel as to whether the trial court's substantial probability finding satisfies the evident proof standard required by section 3 of the ROA, Browne maintained his position that the proper standard is fixed by the local statute and the BRA, rather than the ROA. Therefore, Browne did not provide the Court with any argument as to whether the evident proof standard was met in this case.

charged with first degree murder, we need now only to ascertain the meaning of "proof is evident or the presumption is great" to determine whether the trial court erred in finding the evidentiary standard satisfied in this case. Once a trial judge establishes that a defendant has been charged with first degree murder, the judge's next task is to determine from the facts before him whether the proof is evident (or presumption great) that the defendant committed first degree murder. A trial judge may detain a first degree murder defendant pending trial only if the judge finds in the affirmative. *See* Revised Organic Act § 3.

### 1. *The Burden and Quantum of Proof Required by Section 3*

In order to provide future guidance to the trial courts and to determine whether the trial court in this case correctly found the proof evident, we must first consider and establish the appropriate quantum of proof required for an evident proof determination and the party on whom the burden rests.

The vast majority of jurisdictions with constitutional provisions similar to section 3 of the ROA agree that the burden of proof rests with the government. *See Simpson v. Owens*, 207 Ariz. 261, 85 P.3d 478, 487 n. 15 (Ariz. Ct. App. 2004) ("In fact, almost all of the states employing the 'proof evident or presumption great' standard for bail place the burden upon the State.")[21]; *Florida v. Arthur*, 390 So. 2d 717, 719-20 (Fla. 1980) ("This is the predominant view among jurisdictions with similar provisions."). *See also* MONT. CODE ANN. § 46-9-102 (2003) (burden of proof on state); *Connecticut v. Carter*, 159 Conn. 285, 268 A.2d 677, 678-79 (Conn. 1970); *Illinois v. Purcell*, 778 N.E.2d 695, 700 (Ill. App. Ct. 2001) (holding that statute placing burden on defendant is unconstitutional); H.G. Hirschberg, *Upon whom rests burden of proof, where bail is sought before judgment but after indictment in capital case, as to whether proof is evident or the presumption great,* 89 A.L.R. 2D 355 (originally published in 1963, Westlaw 2008 update); 8A AM. JUR. 2D *Bail and Recognizance* § 48 (Westlaw Database updated May 2008). Only a few states have placed the burden of proof on the defendant. *See* LA. CODE CRIM. PROC. ANN. art. 331 (West 2003); DEL. CODE. ANN. tit. 11,

---

[21] The *Simpson* court collects cases for Arkansas, Colorado, Florida, Hawaii, Iowa, Kentucky, Maine, Nevada, New Jersey, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, and Vermont. *See* 85 P.3d at 487 n. 15.

§ 2103(b) (2001); *Alabama v. Lowe*, 85 So. 707, 708 (Ala. 1920); *Fischer v. Ball*, 212 Md. 517, 129 A.2d 822, 826 (1957); *Huff v. Edwards*, 241 So. 2d 654, 655-56 (Miss. 1970).

▉ ▉ Guided by title 1, section 4 of the Virgin Islands Code[22], we adopt the majority position as governing the burden of proof in this case. *See Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 498-99 (2008) (noting that the Legislature intends the majority rule to govern in the absence of specific legislation). Accordingly, it is the People that must prove that the proof is evident or presumption great that Browne committed first degree murder before Browne can be detained justifiably pending trial.

Those jurisdictions which have defined the phrase "proof is evident or the presumption is great" have given it various meanings. *See generally Simpson*, 85 P.3d at 487 ("The history of the phrase alone suggests that it is unique and that it establishes its own standard since there is no comparison for recourse."). A survey of case law demonstrates that there are three general approaches to defining the evident proof standard. On the whole, states have defined the standard as requiring either probable cause[23], something akin to clear and convincing evidence[24],

---

[22] "The *rules of the common law*, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, *as generally understood and applied in the United States*, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4 (emphasis added).

[23] *Harnish v. State*, 531 A.2d 1264, 1266 (Me. 1987) (probable cause).

[24] *See, e.g., Trammell v. Alabama*, 284 Ala. 31, 221 So. 2d 390, 390 (1969) ("The evidence must be clear and strong, that it would lead a well-guarded and dispassionate judgment...."); *Simpson*, 85 P.3d at 488 ("We thereby join the Rhode Island court in rejecting a standard of probable cause or a standard of beyond a reasonable doubt."); *In re Nordin*, 143 Cal. App. 3d 538, 192 Cal. Rptr. 38, 40 (Cal. Ct. App. 1983) (clear and convincing evidence); *Gladney v. District Court of Denver*, 188 Colo. 365, 535 P.2d 190, 191 (1975) (greater than probable doubt but less than evidence required to sustain a conviction) (approving New Jersey's standard); *In re Steigler*, 250 A.2d 379, 383 (Del. 1969) (directing lower court to follow New Jersey's fair likelihood of conviction standard); *Bates v. Hawkins*, 52 Haw. 463, 478 P.2d 840, 842 (1970) (following New Jersey's fair likelihood standard) (lesser standard than beyond a reasonable doubt); *Ford v. Dilley*, 174 Iowa 243, 156 N.W. 513, 532 (1916) ("The presumption of such guilt is great when the circumstances testified to are such that inference of guilt naturally to be drawn therefrom is strong, clear, and convincing to the unbiased judgment, and is such as to exclude all reasonable probability of any other conclusion."); *Commonwealth et rel. Alberti v. Boyle*, 412 Pa. 398, 195 A.2d 97, 98 (1963) ("sufficient in law to sustain a verdict of murder in the first degree"); *Nevada v. Teeter*, 65 Nev. 584, 200 P.2d 657, 667-68 (1948), *overruled on other grounds by Application of Wheeler*, 81 Nev. 495,

or evidence beyond a reasonable doubt.[25]

Although articulating the standard in various ways, the overwhelming majority of states require evidence that is greater than probable cause but less than beyond a reasonable doubt. *See supra* n. 22 (noting that at least seventeen states have adopted a middle standard). Of these states, four explicitly adopt a "clear and convincing" standard and four adopt a very similar standard. *See Simpson* 85 P.3d at 492 ("plain and clear . . . [t]he proof must be substantial [in Arizona]"); *In re Nordin*, 143 Cal. App. 3d 538, 192 Cal. Rptr. 38, 40 (Cal. Ct. App. 1983) ("clear and convincing" evidence); *Application of Haynes*, 290 Ore. 75, 619 P.2d 632, 636 (1980) ("the evidence should at least be clear and convincing"); *Nevada v. Teeter*, 65 Nev. 584, 200 P.2d 657, 667-68 (1948) ("clear and obvious" evidence); *Brill v. Gurich*, 965 P.2d 404, 408 (Okla. Crim. App. 1998) (clear and convincing evidence); *Application of Haynes*, 290 Ore. 75, 619 P.2d 632, 636 (1980) ("strong, clear, and convincing" evidence); *Nguyen v. Texas*, 982 S.W.2d 945, 947 (Tex. Crim. App. 1998) ("clear and strong evidence" required in Texas). Such a position is consistent with the fact that "[t]he word 'evident' is construed to mean manifest, plain, clear, obvious,

---

406 P.2d 713 (1965) (requiring "clear and obvious" evidence that a capital offense has been committed); *New Jersey v. Engel*, 99 N.J. 453, 493 A.2d 1217, 1220 (1985) (fair likelihood of conviction standard requires evidence that is "cogent and persuasive"); *Ex parte Wright*, 34 N.M. 422, 283 P. 53, 53 (1929) ("The test frequently, if not usually, applied is whether a verdict upon such evidence could be sustained."); *Brill v. Gurich*, 965 P.2d 404, 408 (Okla. Crim. App. 1998) (clear and convincing evidence); *Application of Haynes*, 290 Ore. 75, 619 P.2d 632, 636 (1980) ("The likelihood of guilt must be more than 'fair,' it must be 'strong,' before release can be denied . . . . While for this purpose guilt need not be shown "beyond a reasonable doubt," as it must for conviction, the evidence should at least be clear and convincing."); *Fountaine v. Mullen*, 366 A.2d 1138, 1141 (R.I. 1976) (greater than probable cause but less than beyond a reasonable doubt); *Nguyen v. Texas*, 982 S.W.2d 945, 947 (Tex. Crim. App. 1998) ("clear and strong evidence, leading to a well-guarded and dispassionate judgment" of defendant's guilt); *Utah v. Kastanis,* 848 P.2d 673, 675-76 (Utah 1993) (constitutional language amended to require "substantial evidence to support the charge") (holding that standard is the same despite change in language and approving New Jersey's standard); *Vermont v. Duff*, 151 Vt. 433, 563 A.2d 258, 262-63 (1989) (adopting Rhode Island's middle standard which is greater than probable cause but less than beyond a reasonable doubt and disapproving of Maine's standard) ("[T]he State must show that facts exist that are legally sufficient to sustain a verdict of guilty.").

[25] *California v. Perry*, 605 So. 2d 94, 96 (Fla. Dist. Ct. App. 1992) ("stronger than beyond a reasonable doubt"); *Huff v. Edwards*, 241 So. 2d 654, 656 (Miss. 1970) ("Generally, if a reasonable doubt or a well-founded doubt of guilt can be entertained, then the proof cannot be said to be evident nor the presumption great.").

apparent, and notorious, and unless it plainly, clearly, and obviously appears by the proof that the accused is guilty of a capital crime, bail should be allowed." 8A Am. Jur. 2d *Bail and Recognizance* § 48 (2008).

Additionally a clear and convincing standard is appropriate because, if the term "proof is evident or the presumption is great" is interpreted to require mere probable cause to believe that the defendant is guilty of first degree murder, "the guarantee would add nothing to the accused's rights, since a suspect may not be held without a showing of probable cause in any instance." *Fountaine v. Mullen*, 366 A.2d 1138, 1141 (R.I. 1976); *see also* 5 V.I.C. § 3562. A probable cause interpretation, adopted only by Maine, gives inadequate weight to a defendant's fundamental right to liberty and to the vital presumption of innocence. *See Vermont v. Duff*, 151 Vt. 433, 563 A.2d 258, 263 (1989); *see also Salerno*, 481 U.S. at 755, 108 S. Ct. at 2105 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). On the other hand, requiring proof beyond a reasonable doubt at the pretrial bail stage of a criminal proceeding would also be imprudent. As the Rhode Island Supreme Court succinctly explained:

> Not only is it highly improbable that the framers intended the bail hearing to determine the precise question to be answered at the trial itself, but such duplication obviously wastes judicial resources and might prejudice a defendant's opportunity for a fair trial. If it becomes common practice to deny bail only after a judge has determined that the evidence produced at the bail hearing demonstrates guilt beyond a reasonable doubt, and the jury learns that a defendant has been denied bail, they may be highly predisposed to convict.

*Fountaine*, 366 A.2d at 1142.

We also note that, in determining whether "the proof is evident or presumption is great," a trial judge should focus on the strength of the evidence offered by the People rather than the ultimate guilt or innocence of the defendant. *See, e.g., In re Steigler*, 250 A.2d 379, 383 (Del. 1969) ("We emphasize that the full inquiry required . . . is preliminary in nature. It is designed to determine basically whether or not the accused, if admitted to bail, would be tempted to forfeit his bail and to flee the jurisdiction rather than face the prospect of conviction and a possible sentence of death. If, therefore, such a conviction is fairly likely,

presumably the temptation to flee would be great and bail should be denied. In ruling on an application for bail in capital cases, the Superior Court should avoid even the appearance of a determination of ultimate guilt or innocence."); *New Jersey v. Konigsberg*, 33 N.J. 367, 164 A.2d 740, 745 (1960) ("Guilt or innocence is not the issue; there can be no evaluation of evidence with that result in mind; direct conflicts as to inculpatory and exculpatory facts cannot be resolved. Manifestly, the issue of guilt, being the ultimate one, must await jury determination at the trial. . . . It is essential that the proceeding be kept in proper perspective as a preliminary one; one which cannot and should not be allowed in any way to bear upon or influence the ultimate outcome of the plenary trial or the evaluation of the resulting verdict.").

 Accordingly, again guided by title 1, section 4 of the Virgin Islands Code, we now adopt the majority position that "the proof is evident or the presumption is great" evidentiary standard requires something more than probable cause but less than beyond a reasonable doubt. *See Robles*, 49 V.I. 491, 498-99. More specifically, a trial judge must find clear and convincing evidence that the defendant committed the offense for which he is before the court prior to detaining a first degree murder defendant pursuant to section 3 of the ROA.

### 2. The Trial Court Did Not Sufficiently Determine whether the Proof Is Evident or Presumption Great that Browne Committed First Degree Murder

In denying Browne pretrial bail pursuant to section 3 of the ROA, the trial court held that its January 7, 2008 finding of "substantial probability," under the local statute, established that the proof is evident that Browne committed first degree murder. In the January 7, 2008 order, the trial judge found substantial probability from six specific findings of fact. The court made the following six findings:

1. One witness, who was also a victim, observed a vehicle that the witness knew to be [Browne's] driving through the crime scene at the time of the shootings.

2. A second witness provided a description of the vehicle from which the shots were fired that closely matched the description provided by the first witness.

3. A third witness positively identified [Browne] as the driver of the vehicle, both by indicating that the witness knew [Browne] and by selecting him from a photo array.

4. [Browne] gave a statement to the police indicating that he had been at the Divi Casino, using his vehicle, and return[ed] home between 12:30 AM and 12:45 AM. This statement was belied by surveillance tapes from the Casino, which indicated that he departed at 12:41 AM. The shootings took place sometime before 1:27 AM, on December 25, 2007.

5. The vehicle, which is registered to [Browne] and his wife, was later located at the Harbor View Apartments. [Browne] resides in Richmond. A search of the vehicle revealed a spent shotgun casing consistent with casings found at the crime scene.

6. [Browne's] wife gave the police a statement indicating that she had taken the vehicle to Harbor View Apartments and left it there because of mechanical difficulties. The chronology she gave contradicted that of [Browne], and the alleged mechanical difficulty could not be replicated by a police mechanic.

(Order on Mot. for Detention 3.)

Browne was charged with first degree murder pursuant to title 14, section 922(a)(2) of the Virgin Islands Code, which defines first degree murder as:

(a) All murder which-

. . . .

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny . . . .

14 V.I.C. § 922(a)(2). Additionally, title 14, section 921 defines murder as "the unlawful killing of a human being with malice aforethought." 14 V.I.C. § 921. Browne was additionally charged with assault in the first degree under title 14, section 295(1), which requires that one assault another "with intent to commit murder."

 In its order detaining Browne pending trial, the trial court held that "its finding of 'substantial probability' in its Orders (sic) of January 8, 200[8], establishes evident proof under § 3 of the [ROA]." (Order on Mot.

for Detention 5.) Since it is our task to review the record while taking into account the trial court's reasons for detaining Browne, we must determine whether the trial judge's "substantial probability" finding satisfies the evident proof inquiry required by section 3 of the ROA. *See Smalls*, 30 V.I. at 85 (D.V.I. App. Div. 1994) ("While we are not free to ignore the trial court's reasoning, we may amend or reverse a detention or release decision, if our review of the record compels a different result.").

■■ In essence, the trial judge equated the "substantial probability" standard employed in the local detention statute with the proof is evident or presumption is great requirement of section 3 of the ROA. *See* 5 V.I.C. § 3504a(c)(3) (requiring, among other findings, a finding of "substantial probability that the person committed the offense for which he is present before the court"). BLACK'S LAW DICTIONARY defines clear and convincing evidence as "[e]vidence indicating that the thing to be proved is *highly probable* or reasonably certain." BLACK'S LAW DICTIONARY 596 (8th ed. 2004) (emphasis added). MERRIAM-WEBSTER'S DICTIONARY OF LAW likewise defines clear and convincing evidence as "evidence showing a high probability of truth of the factual matter at issue." MERRIAM-WEBSTER'S DICTIONARY OF LAW 172 (Collector Ed. 2005). Similarly, "[a] substantial probability means much more likely than not." *In re Commitment of Laxton*, 647 N.W.2d 784, 795 (Wis. 2002). In light of the similarity between the definitions, we find the substantial probability standard analogous to the clear and convincing standard, which is necessary for the evident proof standard.[26]

■■ ■■ As stated previously, the trial court held that the six findings of fact listed above established substantial probability that Browne committed first degree murder. However, this Court finds those findings insufficient for that purpose. Specifically, findings numbers 1, 2, and 3 establish by clear and convincing evidence that Browne was operating a vehicle from which shots were fired while driving through the alleged crime scene at the time of the shootings. Finding number 5 shows by clear and convincing evidence that a shotgun casing, which was consistent with

---

[26] It is noteworthy that the local statute requires "clear and convincing" proof that the defendant is the person charged with the dangerous offense and a "substantial probability" that the defendant committed the offense charged. *See* 5 V.I.C. § 3504a(c). Accordingly, it seems that "the proof is evident or the presumption is great" standard also equates to the "substantial probability" standard.

casings found at the crime scene, was found in Browne's vehicle. However, findings numbers 4 and 6 represent disputed facts as to the location of Browne's vehicle during relevant time periods. *See Konigsberg*, 164 A.2d at 745 ("[D]irect conflicts as to inculpatory and exculpatory facts cannot be resolved [by the trial judge in pretrial bail proceedings]"). As a whole, the findings do not establish clear and convincing evidence or a substantial probability that Browne committed first degree murder, or even that the alleged crime scene referred to was a murder scene at which two people died or the cause of their death. Therefore, although the above findings of fact may place Browne at the crime scene, they do not sufficiently demonstrate that "the proof is evident or the presumption is great" that Browne committed first degree murder in violation of title 14, section 922(a)(2), as required by section 3 of the ROA.

■■■ Accordingly, because the trial court's substantial probability finding did not present sufficient analysis[27] as to whether the proof is evident or presumption great that Browne committed first degree murder, we must remand this case to the trial court for such a determination in accordance with section 3 of the ROA and with our holdings herein.

### III. CONCLUSION

For the reasons above, we hold that section 3 of the Revised Organic Act governs pretrial detention of defendants charged with first degree murder in the Superior Court under Virgin Islands law. Additionally, in accordance with the majority view, we hold that the People has the burden of proving that "the proof is evident or presumption is great" that the defendant committed first degree murder. As to the quantum of proof, we adopt a clear and convincing standard. Finally, although we find the substantial probability standard akin to a clear and convincing standard, we remand to the trial court for a determination of whether the proof is

---

[27] We emphasize that in order to facilitate proper review, a Superior Court order detaining a defendant pending trial under section 3 of the ROA should contain a detailed analysis of why the facts clearly and convincingly establish that the proof is evident or presumption great that the defendant committed first degree murder. *See, e.g., In re Pipinos*, 33 Cal. 3d 189, 187 Cal. Rptr. 730, 654 P.2d 1257, 1260 (1982) ("[A] trial court's statement of reasons should contain more than mere findings of ultimate fact or a recitation of the relevant criteria for release on bail . . . .").

evident or the presumption is great that Browne committed first degree murder, consistent with this opinion.