**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**ISAAC AUSTRIE, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**CHARMAINE CLARKE, Defendant**

Criminal Nos. ST-08-CR-370; ST-08-CR-371

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

October 6, 2008

117

COURTNEY REESE, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *Counsel for the People.*

JULIE SMITH TODMAN, ESQ., Office of the Territorial Public Defender, St. Thomas, USVI, *Counsel for Defendant Austrie.*

DAVID J. CATTIE, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Counsel for Defendant Clarke.*

CARROLL III, *Judge*

## MEMORANDUM AND ORDER

(October 6, 2008)

THIS MATTER came on for hearing on September 29, 2008 on the People's Motion for Pretrial Detention. On September 22, 2008, the People moved for detention of the Defendants pursuant to the terms of section 3 of the Revised Organic Act of 1954 which provides for the pretrial detention of defendants who are charged with first degree murder when "the proof is evident or the presumption great." The People of the Virgin Islands appeared through Courtney Reese, Esq., Assistant Attorney General. Defendant Isaac Austrie was present and represented by Julie Smith-Todman, Esq., Territorial Public Defender. Defendant Charmaine Clarke was present and represented by David Cattie, Esq. For the reasons set forth below, the People's Motion for Pretrial Detention will be granted with respect to Defendant Isaac Austrie and denied with respect to Defendant Charmaine Clarke.

## DETENTION HEARING

On or about September 8, 2008, the Defendants, Isaac Austrie ("Austrie") and Charmaine Clarke ("Clarke"), were arrested and charged with premeditated first degree murder, felony murder, third degree assault and unauthorized use of a firearm during the commission of a crime of violence. These charges stemmed from a May 18, 2008 incident in the

Smith Bay area during which the victim, Geffrard Fritz ("Fritz"), was shot and killed on the side of the road.

The Virgin Islands Police Department was called to the scene of the homicide to investigate. Sergeant Lionel Bess took a statement from a witness who was passing by at the time. According to the witness, gunshots were heard as (s)he drove on Smith Bay Road shortly after midnight. The witness turned the corner and saw a man known to him/her as "Sogee" a.k.a. "Bret" or "Brent" a.k.a. Issac Austrie running across the street trying to tuck a gun that he held in his right hand into his pants. The witness saw Austrie running from the direction where a body lay face down on the ground.

Austrie ran to the other side of the road and got into the passenger side of a white Ford Focus. The witness had known Austrie for approximately eight months as the boyfriend of Charmaine Clarke. The witness looked into the car as (s)he drove by and recognized the driver of the car as Charmaine Clarke, whom (s)he had known for approximately ten years. After passing the car, the witness looked back and noticed that the license plate of the car started with the letter "T" and ended with the numbers "566".

On Monday, June 30, 2008, the witness viewed photo arrays consisting of six photos each and picked both Austrie and Clarke out as the individuals (s)he saw in the early morning hours of May 18 in Smith Bay. The police had forensic evidence that confirmed that a projectile or bullet was found under the body of the deceased. The police also verified that Clarke owns a white Ford Focus with the license plate number "TCH 566." Finally police confirmed that neither Austrie nor Clarke is authorized to possess or carry a firearm in the Virgin Islands.

### DISCUSSION

On September 22, 2008, under section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561 (hereinafter "the ROA"), the People made a motion for pretrial detention of the Defendants based on the fact that they were charged with first degree murder, for which the "proof is evident or the presumption great."[1] The People also asserted that the Defendants pose a danger to the safety of the community.

---

[1] Section 3 of the ROA, 48 U.S.C. § 1561, provides:

■■ The Supreme Court of the Virgin Islands recently expounded upon the application of this provision of the ROA in *Jeffrey Browne v. People of the Virgin Islands*, No. 2008-022, 2008 V.I. Supreme LEXIS 33, *26 (V.I. August, 29, 2008) ("[Section 3 of the ROA] remains a valid legal provision to be observed and implemented by local courts . . . [and] governs the issue of pretrial detention for first degree murder defendants in local Virgin Islands courts . . ."). As articulated in *Browne*, the burden of proof rests with the government to provide evidence that the standard has been met. *Id.* 2008 V.I. Supreme LEXIS 33 at *34. Thus, it is the People who "must prove that the proof is evident or presumption great that [the Defendants] committed first degree murder before [they] can be detained justifiably pending trial." *Id.* Although the standard contained in the ROA has been interpreted in different ways in different jurisdictions, the Supreme Court of the Virgin Islands adopted the majority position that " 'the proof is evident or the presumption is great' evidentiary standard requires something more than probable cause but less than beyond a reasonable doubt . . . a judge must find clear and convincing evidence that the defendant committed the offense for which he is before the court." *Id.* 2008 V.I. Supreme LEXIS 33 at *43. *The Browne* Court interpreted the standard to be applied in this case to require *"clear and convincing evidence,"* which indicates *"that the thing to be proved is highly probable or reasonably certain." Id.* 2008 V.I. Supreme LEXIS 33 at *47 (emphasis added).

Ultimately, the *Browne* Court was not convinced that the findings of the trial court established "clear and convincing evidence or a substantial probability that Browne committed first degree murder, or even that the alleged crime scene referred to was a murder scene at which two people died or the cause of their death." *Id.* 2008 V.I. Supreme LEXIS 33 at *49. While the findings of the lower court placed Browne at the crime scene, the evidence presented was insufficient to demonstrate " 'that the proof is evident or the presumption is great' that Browne committed first degree murder . . . ." *Id.* The Supreme Court, based upon this analysis, remanded the case to the trial court to make the determination as to whether the proof was evident or the presumption great that Browne committed first

---

[A]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, except for first degree murder or any capital offense when the proof is evident or the presumption great.

degree murder. *Id.* Using *Browne* as a guide, this Court must now consider the evidence with respect to Defendants Austrie and Clarke to ascertain whether the standard under the ROA is met in this case.

I. Defendant Isaac Austrie

■ The evidence presented concerning the likelihood that Austrie committed first degree murder is compelling. A witness who was not more than three feet from Austrie was able to identify him holding a gun and running away from a body on the ground only seconds after hearing shots fired. This witness was able to pick Austrie out of a photo identification line-up and knew him to be the boyfriend of Clarke, who was seen driving the car. There was no evidence of provocation or self-defense at the scene and the shooting took place during the early morning hours of the day, which may suggest that Austrie was seeking the cover of night and/or premeditated the circumstances of the shooting. In addition, forensic and ballistics evidence showed that Fritz was shot four times with three gunshots wounds in his torso and one in his right arm. Police recovered four (4) spent casings from the scene and found one projectile under Fritz's body. An individual who refused to give his last name to the police confirmed that four shots were fired.

Comparing this case in *Browne*, there is more evidence here that Austrie actually committed the murder and was not just on the scene. The main findings in *Browne* involved three witnesses who were able to provide evidence that: (1) Browne's vehicle was driving through the scene at the time of the incident, (2) the description of the vehicle that fired the shots closely matched the description of Browne's vehicle, and (3) Browne was positively identified as the driver of the vehicle by a witness who knew him and picked him out of a photo array. *Id.* 2008 V.I. Supreme LEXIS 33 at *44. By comparison, several gunshots were heard seconds before the witness in this case saw Austrie running across the street with a gun in his hand and away from a body lying on the ground. The witness gave police the information to identify the car of Clarke, Austrie's girlfriend, and the witness picked both Austrie and Clarke out of a photo identification line-up. In contrast, the *Browne* Court found that the evidence against the defendant even failed to "allege[] the crime scene referred to was a murder scene at which two people died or the cause of their death." *Id.* 2008 V.I. Supreme LEXIS 33 at *49. Thus, while the Browne Court had evidence that placed Browne at the scene of the crime,

they did not have evidence that he was the shooter or intended to kill anyone. Here, not only was Austrie seen running away from Fritz's body with a gun only moments after shots were fired, but the time and circumstances also indicate a high probability that he is the one who shot and killed Fritz. An autopsy on Fritz determined that he died from, multiple gunshot wounds and ballistics evidence established that a projectile or bullet was found under Fritz's body at the scene of the crime. Austrie was seen fleeing the scene, another common indicator of a guilty conscience. It is also important to note that although only one witness gave a statement to the police and participated in the pretrial identification procedure, there was another witness in the car at the time who also verbally corroborated the first witness's account of events to Sergeant Bess.

Based upon the evidence adduced at the hearing the Court finds that there is clear and convincing evidence of the crime of murder first degree established by the People with respect to Austrie. Since there is such clear and convincing evidence of the crime of murder first degree, the proof is evident of such crime and Austrie will be detained pending trial.

## II. Defendant Charmaine Clarke

 Contrary to the Court's finding that the proof is evident that Austrie committed the crime of murder first degree, the analysis of the facts with respect to Clarke leads the Court to a different conclusion.[2] The analysis for Clarke must begin with V.I. CODE ANN. tit. 14, § 11(a)-(c) (1996) which states:

> (a) Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another person would be a crime or offense, is punishable as a principal.
> (c) Persons within this section shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal.

---

[2] We note that while Clarke's attorney objected to her continued pretrial detention despite the fact that bail had previously been set, the Court reserves the right to revisit bail issues and detain those who are charged with first degree murder, pending a hearing on the merits.

 *In United States v. Xavier*, 29 V.I. 279, 2 F.3d 1281 (3d Cir. 1993) the court found that:

> Liability as an aider and abettor requires proof that defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed . . . . The government can show the requisite intent with evidence defendant encouraged or helped the perpetrator.

*Id.* at 1288 (Defendant was found guilty as an aider and abettor when the evidence showed that he not only yelled, "Let's go Franky," and drove the car they sped off in after the attack, but he also helped provide his brother (the principal) with the gun that was used during the crime). Case law also supports the well-settled rule that mere presence is not enough to establish guilt as an aider and abettor, and that the government must also prove that the defendant was a participant and not merely a knowing spectator. *Government of the Virgin Islands v. Davis*, 35 V.I. 72 (Terr. Ct. 1997).

In the instant case, there is evidence that Clarke was the driver of the car that waited at the side of the road during the shooting. After shots were fired and Fritz's body lay on the ground, Clarke continued to wait in the car while Austrie ran across the street and got into the passenger side. Clarke then drove off, fleeing from the crime scene with Austrie. Clarke was clearly identified by a witness who claims that (s)he has known Clarke for approximately ten years. The witness described Clarke's license plate as beginning with the letter "T" and ending in "566." In fact, the People produced evidence that the license plate on Clarke's car is "TCH 566." In addition, the witness correctly identified Clarke out of a photo identification line-up as the woman who was driving the white Ford Focus on May 18 when the shooting occurred.

 Thus, while there is clear and convincing evidence that Clarke was on the scene and acted after the fact to help Austrie flee, the People have failed to provide sufficient evidence to show that Clarke was more than a "knowing spectator." In other words, the People have failed to meet their burden to provide clear and convincing evidence that Clarke intended to kill Fritz with malice aforethought and with willful and deliberate premeditation. In contrast to the facts in *Xavier* discussed above, there is no evidence that Clarke helped secure a weapon for Austrie or that she encouraged him in word or deed to commit the murder.

Although the People may have presented clear and convincing evidence that Clarke is guilty as an accessory after-the-fact. they have failed to show that the evidence of her having committed first degree murder is clear and convincing. Since such evidence is lacking, Clarke cannot be detained under the ROA. *See Browne*, 2008 V.I. Supreme LEXIS 33 at *43 (court must find clear and convincing evidence that the defendant committed the offense for which he is before the court prior to detaining a first degree murder suspect).[3] The Court will, therefore, set bail for Clarke in the amount of One Hundred Thousand Dollars and set strict standards for release including house arrest with electronic monitoring and the appointment of a third party custodian.[4]

## CONCLUSION

This Court has applied Browne holding that "clear and convincing" evidence is needed in order to secure pretrial detention for defendants who are charged with first degree murder when the proof is evident or the presumption great. *Browne*, 2008 V.I. Supreme LEXIS 33 at *11. As noted in Browne, this Court's inquiry here focuses on the strength of the People's evidence offered rather than the ultimate question of guilt or innocence. *Id*. 2008 V.I. Supreme LEXIS 33 at *42.

With respect to Austrie, this Court believes that the evidence presented is clear and convincing, because Austrie was identified by a witness who can place him at the scene of the crime only moments after it occurred.

---

[3] In their motion, the People also contend that the Defendants pose a "danger to the community," thereby mimicking the language of Virgin Islands detention statute which includes murder first degree as a detainable offense under that statute and the Rail Reform Act ("BRA"), 18 U.S.C § 3141-3156, which would include murder first degree as a crime of violence under the provisions of that statute. The language "danger to the community" in the motion is totally superfluous, since the standard for detention under the ROA is whether the "proof is evident or the presumption great." Furthermore, *Browne* makes it clear that the ROA, and not the Virgin Islands detention statute or the BRA, governs pretrial detention for defendants charged with murder first degree in the Superior Court. 2008 V.I. Supreme LEXIS 33 at *33.

[4] While the Court finds insufficient evidence to detain Clarke under the ROA, Sergeant Bess testified about a possible motive for the murder on the part of Defendant Clarke. However, the source was an anonymous caller and the People doubt that they will be able to present the witness or other evidence at trial and, therefore, such testimony cannot be used to detain Clarke pending trial. However, the Court can consider such testimony in setting the conditions for release and will set very strict standards to ensure that Clarke does not try to approach any potential witnesses pending trial.

Not only was Austrie at the scene, but he was seen running from the body with a gun in his hand. Austrie's actions of running from the body and trying to tuck the gun in his pants demonstrate evidence of a guilty conscience. Finally, other evidence was presented to corroborate the People's theory, namely, ballistics and forensic evidence, and the registration of a white Ford Focus that belongs to Clarke. Taking all of these factors into consideration, there is clear and convincing evidence that Austrie did commit this offense and this Court is required to detain him based on the provisions in the ROA.

With respect to Clarke, this Court finds that the People have not presented clear and convincing evidence that she committed first degree murder. While she may have plotted with Austrie in this crime, the People were unable to present any credible evidence to that effect. There was no testimony concerning any deeds or actions that could be attributed to Clarke's intent to kill Fritz. The only evidence presented against Clarke was that she was waiting in the car for Austrie and drove him away from the scene of the crime. There are any number of inferences that can be drawn or scenarios that can be imagined from these actions. Therefore this Court does not find clear and convincing evidence of the crime of murder first degree as to Clarke.

Accordingly, it is hereby

**ORDERED** that the People's Motion for Pretrial Detention with respect to Defendant Issac Austrie is **GRANTED**; **and** it is further

**ORDERED** that Defendant Austrie shall be **COMMITTED** to the custody of the Virgin Islands Bureau of Corrections pending trial for confinement in a corrections facility separate to the extent practicable from persons awaiting or serving sentences or being held in custody pending appeal; that the Defendant be afforded a reasonable opportunity for private consultation with counsel; and that the Virgin Islands Bureau of Corrections deliver the to the Defendant Court for any appearance in connection with a court proceeding; and it is further

**ORDERED** that the People's Motion for Pretrial Detention with respect to Defendant Charmaine Clarke is **DENIED**; and it is further

**ORDERED** that Defendant Clarke may secure her release upon the posting of a bond in the amount of **ONE HUNDRED THOUSAND DOLLARS ($100,000.00)** and it is further

**ORDERED** that Defendant Clarke shall be **RELEASED** into the custody of her mother, Eula Clarke, as third-party custodian, and she shall

reside with Eula Clarke at her residence under house arrest with electronic monitoring pending trial shall and not change her residence without permission from the Court; and it is further

**ORDERED** that Defendant Clarke shall not leave her mother's residence except to attend Court proceedings or to confer with her attorney, at which time, she shall be accompanied by her third-party custodian; and it is further

**ORDERED** that pending trial, Defendant Clarke shall report telephonically to the Office of Probation on a daily basis as required by the Office of Probation; and it is further

**ORDERED** that Defendant Clarke shall not contact any of the witnesses pending trial, and shall not harass, threaten, intimidate or stalk them; and it is further

**ORDERED** that Defendant Clarke shall contact her attorney once per week on Wednesdays; and it is further

**ORDERED** that Defendant Clarke shall not possess any dangerous weapons, or abuse alcohol or use any controlled substances; and it is further

**ORDERED** that Defendant Clarke shall not leave the jurisdiction of the Virgin Islands without the consent of this Court and shall surrender to the Court all travel documents; and it is further

**ORDERED** that Defendant Clarke shall not violate any laws of the United States or the Virgin Islands during her release; and it is further

**ORDERED** that a copy of this Memorandum and Order shall be served personally upon the Defendants, Issac Austrie and Charmaine Clarke and the Bureau